Div. 523, 81 N. Y. Supp. 603; Cutting v. Burns, 57 App. Div. 185, 68 N. Y. Supp. 269.

The petitions to the state board of tax commissioners which were admitted in evidence in Hindley v. Manhattan Ry. Co., 185 N. Y. 335, 345, 78 N. E. 276, are not in the same category at all; and, further, in that case the petition was made when the prescription had, after the 20-year period, ripened into an estate. In our opinion the learned trial court was justified in finding as a fact from this evidence that defendants and their predecessors were not during the prescriptive period challenging the right of the true owner, and hence there was nothing upon which to found title by adverse possession.

The plaintiff also proved that since the original entry the defendants had increased the length of their trains, their number, had changed · the method of operation of their road from steam to electricity, and, as an incident thereto, had laid a third rail and built a walk by the side of the structure. This, however, is not such an increase in the user or change of the character of that user as to be deemed an abandonment of any right acquired under the original entry. Bremer v. Manhattan Ry. Co., 191 N. Y. 333, 84 N. E. 59.

The judgment must be affirmed, with costs. All concur.

---

### SCHEER v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. June 12, 1908.)

1. TRUSTS—OPERATION OF STATUTE OF USES TO EXECUTE TRUSTS.

Under Rev. St. (1st Ed.) p. 728, pt. 2, c. 1, tit. 2, § 49, providing that every disposition of land shall be directly to the person in whom the right to the possession and profits shall be intended to be invested, and, if made to one in trust for another, no estate or interest shall vest in the trustee, a conveyance to another as trustee for grantor's wife to have and to hold during her natural life with power to mortgage, lease, or sell with the trustee's consent, but should she not mortgage, lease, or sell before the youngest child became 21, then not to mortgage, lease, or sell without the children's consent, but to hold the same during her natural life, and then to be divided equally among the children, vested the title in the wife for life with remainder to the children, which life estate in the wife under Rev. St. (1st Ed.) p. 732, pt. 2, c. 1, tit. 2, § 81, providing that, if an absolute power of disposition shall be given to the owner of an estate for life or years, the same shall be changed into a fee in respect to creditors and purchasers, and page 733, § 85, providing that every power of disposition shall be deemed absolute, was changed into a fee in respect · to her creditors or grantees by the absolute power of disposition.

2. EMINENT DOMAIN—PROCEEDINGS TO TAKE PROPERTY—RECORDING OF COPY OF ORDER OF CONFIRMATION.

Where an owner allowed a railway company to enter before recording a certified copy of the order of confirmation in condemnation proceedings and accepted payment of the award, he is not in a position to assert that under Railroad Law, Laws 1850, p. 219. c. 140, § 18, providing that a certified copy of the order shall be recorded, and that thereupon and on payment of the compensation for the land the company shall be entitled to enter, the company did not acquire the interest sought because of its failure to record a certified copy of the order of confirmation.

3. SAME—EFFECT OF ORDER.

A certified copy of an order of confirmation in condemnation proceedings recorded after the commencement of a suit against a railway com-

pany claiming under the condemnation proceedings to restrain continued trespasses is available in that suit, as in equity relief is given on the facts as they exist up to the time of deciding the case.

4. ADVERSE POSSESSION—NECESSITY OF CLAIM OF TITLE.

 Taking possession of premises by a railway under an order of confirmation in condemnation proceedings, and continuance therein with its tracks and by operation of its road, cannot ripen into title to the fee by adverse possession within Code Civ. Proc. § 369, since its possession, being under the order, is not under claim of title, but only of an easement in the land.

5. SAME—EVIDENCE.

 That a railroad mowed weeds outside of its right of way did not give title to the land mowed by adverse possession.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adverse Possession, §§ 82, 83.]

Appeal from Judgment on Report of Referee.

Suit by William Scheer against the Long Island Railroad Company, which claimed under condemnation proceedings instituted by its predecessor, the Rockaway Railway Company, in 1871, to acquire a strip 99 feet wide for its right of way. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before WOODWARD, HOOKER, RICH, MILLER, and GAYNOR, JJ.

David B. Ogden, for appellant.
J. W. Treadwell, for respondent.

GAYNOR, J. The plaintiff's land is along the defendant's railroad on both sides, the frontage thereon being about 350 feet. The land in dispute is two strips 19½ feet wide in the right of way claimed by the defendant, which is a strip 99 feet wide, viz., one on each side thereof, leaving a strip 60 feet wide in the middle. The plaintiff thus concedes to the defendant a strip 60 feet wide through the center of the said strip of 99 feet, although the defendant's predecessor acquired title to the whole strip or else to none by the condemnation proceedings under which the defendant claims and which the plaintiff assails.

The question is whether the condemnation proceedings were effectual to acquire the railroad use or easement which the defendant claims, and that depends on whether the said proceedings were against the owner of the land. The plaintiff claims that the title was in Ann Norton, wife of Samuel R. B. Norton, for her life, remainder in fee to their children, when the condemnation proceedings were begun in 1871; and his title is from all of them by deeds of conveyance made in 1892 and 1893. The defendant claims that the title was in the said Ann Norton alone in fee; and in this it is correct. The common source of title is the said Samuel R. B. Norton. In 1854 he conveyed a large tract which embraced the premises in dispute to his son John L. B. Norton "as trustee of and for Ann Norton, wife of said party of the first part," "to have and to hold during the natural life of the said Ann Norton, with power to mortgage, lease or sell the same or any part thereof by and with the consent of said trustee, but should she not mortgage, lease or sell the same before the youngest child of the said grantor and the said Ann Norton be-

comes twenty one years of age, then not to mortgage, lease or sell at all without the consent of the said children, but to hold the same during her natural life, and then to be divided equally" among the said children. No trust being prescribed, the title vested in the nominal beneficiaries, i. e., in Ann Norton, the wife, for her life, remainder to the children. Rev. St. (1st Ed.) p. 728, pt. 2, c. 1, tit. 2, § 49. But the absolute power of disposition given to the wife, free from any trust as to the proceeds, changed the life estate to her into a fee in respect of her creditors or grantees. Id. p. 732, §§ 81, 85. In 1862, one of the children being still under age, she conveyed the tract to her son George C. Norton for an expressed consideration of $3,000, the said trustee and her husband joining therein, and by a deed of the same date the said grantee conveyed the same premises back to her. It is claimed that these two conveyances were a mere subterfuge to get the fee absolute in Ann Norton, and that they were therefore void. They were not void; at most they could have been voidable at the suit of the remaindermen, if their mother was under any trust duty to them in respect of the property. But she sustained no such relation to them. She had an absolute power of disposition of the property for her sole benefit. Having such power she had the right to execute it in any way she saw fit, and therefore no way she might adopt could be an unlawful subterfuge. It was only necessary that the so-called trustee consent, and that he did by joining with her in the deed.

The railroad condemnation proceedings embraced three parcels. The commissioners appraised and reported on each parcel separately. A part of the strips in dispute (116 feet in length thereof) is embraced in the description of the large parcel which is first in the order of confirmation, and the remainder in that which is second.

The allegation of the petition in respect of the first is that it is "owned or claimed by Samuel R. B. Norton," and that "John L. Norton, Jr., and Ann Norton, his wife, have or claim to have some interest in said premises." The husband of the owner Ann Norton, from whom she had got title in the way already stated, is alleged to be the owner, and she is misnamed the wife of John L. Norton, Jr. But it is not necessary to discuss the effect of this, for she was served and appeared in the proceeding, and claimed to be the owner of this parcel, and the award was made to her as owner by the commissioner's report, and the order of confirmation, made in 1872, recites that the petition was amended by describing her as wife of Samuel R. B. Norton and as owner, and directs the award to be paid to her as owner. The said order was made on notice to her. The referee has found on sufficient evidence that the award was paid to her, and the railroad went into possession and laid its first track in 1872. This all sufficed to vest the railroad company with the use or easement which the statute enabled it to acquire by such proceedings.

It is claimed by the plaintiff, however, that such vesting never occurred for failure to record a certified copy of the order of con-

firmation in the county clerk's office. Section 18 of the said statute (Laws 1850, p. 219, c. 140) provides that:

"A certified copy of the order so to be made as aforesaid shall be recorded at full length in the clerk's office in the county in which the land described in it is situated, and thereupon and on the payment or deposit by the company of the sums to be paid as compensation for the land * * * the company shall be entitled to enter upon, take possession of and use the said land for the purposes of its incorporation during the continuance of its corporate existence," etc.

Now, if it were taken to be the law that the recording of a certified copy of the order was a prerequisite to the vesting of the easement in the company, and that therefore it would not be in a position to lawfully enter, or obtain an order or mandate giving it possession, against the objection of the landowner, until it had complied with such prerequisite, that is not the case before us. If the owner allow the company to enter before the recording of the order, and accept payment of the award, which is the case here, he is not in a position to assert that the company did not acquire and become vested with the interest sought. The making of the order of confirmation created the reciprocal rights of vendor and purchaser between the landowner and the company and entitled the former to a precept for the collection of the award. Matter of Rhinebeck & Connecticut R. Co., 67 N. Y. 242. The fact that the order is not recorded does not detract from its effect. Oberfelder v. Metropolitan El. R. Co., 138 N. Y. 181, 33 N. E. 937. The opinion in Lent v. N. Y. & M. R. Co., 130 N. Y. 504, 29 N. E. 988, is not to the contrary. There was there only a question of the sufficiency of the complaint in an action by the landowner against the company to collect the award as a debt, as allowed by the amendment of section 18 of the railroad act of 1850 in 1876 (chapter 198, p. 203, Laws 1876). Such amendment provided that the landowner might have the certified copy of the order recorded if the company neglected to do so for 10 days, and gave the company the right to abandon the proceedings within 20 days after notice in writing of such recording. The complaint was therefore insufficient for not alleging the recording of the order and the expiration of the time for abandonment, for there was no debt due until that time. The remarks on this head in the opinion in the Oberfelder Case are only to the same effect. There is no question of purchaser without notice here. The commencement of the proceeding was made notice by the said statute as amended (chapter 282, p. 608, Laws 1854) in respect of all persons made parties; and the order was not required to be recorded as a deed, i. e., in a book of deeds (Morgan v. N. Y. & Mass. R. Co., 130 N. Y. 692, 29 N. E. 990). Moreover, a certified copy of the order has been recorded since this suit was brought, and the fact is available, as is the rule in equity, where relief is given on the facts as they exist up to the time of deciding the case.

The petition names S. Williams as the owner of the said second parcel described in the order of confirmation, and John L. Norton, Jr., and Samuel R. B. Norton as having or claiming some interest,

whereas the land was owned by Ann Norton, as already shown. The award was made to Williams. He did not appear, and the proceedings went by default in respect of this parcel. The owner not being a party, nothing was acquired in this parcel by the proceedings; but the company having taken possession in 1872 under the order of confirmation, and continued therein with its tracks and operating its railroad ever since, it is claimed that it has thereby acquired title by adverse possession. Code Civ. Proc. § 369. But this cannot be so. Its possession being under the said order was not under claim of title, but only of a use or easement in the land, that being all that the order could confer, as is expressly conceded in the brief for the defendant, and as is the law (Heard v. City of Brooklyn, 60 N. Y. 242; Strong v. City of Brooklyn, 68 N. Y. 1; Washington Cemetery Ass'n v. Prospect P. & C. I. R. Co., 68 N. Y. 591; Roby v. N. Y. C. & H. R. R. Co., 142 N. Y. 176); and no possession not under a claim of title in fee, and exclusive of any other right in the land by the claimant, is adverse to the legal title, and will bar the owner or ripen into title by lapse of time, viz., 20 years, under the statute of limitations. The said statute has no application to possession under a claim of some use, term or interest less than the fee. Code Civ. Proc. §§ 368, 369, 371; Jackson v. Johnson, 5 Cow. 74, 15 Am. Dec. 433; Bedell v. Shaw, 59 N. Y. 46; Gross v. Welwood, 90 N. Y. 639.

In the opinion in the case of Miner v. N. Y. C. & H. R. R. Co., 123 N. Y. 242, 25 N. E. 339, which is similar to the case now here, it is said:

"From 1850 to the commencement of this action, more than 30 years, this land was held and possessed under a claim of right, adversely, by the defendant and its predecessors in the title [and that therefore the action was barred]."

Now possession under an executory contract of purchase, or a lease, or a tax lease, or a mortgage in default, is "under a claim of right," and yet, as the cases cited above hold, and as is the settled rule, it would not suffice to make title by adverse possession, or bar ejectment by the owner of the legal title. Nothing short of a claim of full title will do that. The language of the learned judge writing, though large, therefore had reference to title by "prescription," which comes under a different head, applies to easements, and exists outside of the statute of limitations in respect of titles in fee, and has not been reduced to such a statute in this state. Lewis v. N. Y. & H. R. Co., 162 N. Y. 202, 56 N. E. 540; Am. Bank Note Co. v. N. Y. El. R. Co., 129 N. Y. 252, 29 N. E. 302; Leffmann v. L. I. R. Co., 120 App. Div. 528, 105 N. Y. Supp. 487; Betjemann v. Brooklyn Union Railway Co., 111 N. Y. Supp. 567.

The defendant no doubt acquired a right of user by prescription by the lapse of 20 years of continuous user, but only to the extent of such user, as is the measure and rule, and the findings show that that has been wholly within the said 60-foot strip. There is a find-

ing that outside of that strip the defendant has annually mowed the weeds, but there can be no prescription to mow weeds.

The judgment should be reversed.

Judgment reversed on the law and facts, and new trial granted, costs to abide the final award of costs. All concur.